# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

In the Matter of the Application of
Michael Blair Wellington,
     Petitioner,
                    V.

Leanna Lundy
     Respondent

For the Writ of Habeas Corpus

Case No.:

**PETITION FOR WRIT OF HABEAS CORPUS**

(28 U.S.C. § 2254)

## PETITION FOR WRIT OF HABEAS CORPUS

## TO THE HONORABLE PRESIDING JUDGE OF THE ABOVE ENTITLED COURT

Law Office of Winston K. McKesson
Winston Kevin McKesson (SBN 106068)
6080 Center Drive, Ste. 652
Los Angeles, California 90045
T: 310-242-5889
Attorneys for Defendant/Petitioner

## CERTIFICATE OF COMPLIANCE

I certify that, the attached Petitioner's Petition For Writ Of Habeas Corpus uses a 13 point Times New Roman font and contains 7,320 words, not including the cover, the Tables of Contents and Authorities, the Certificate of Interested Entities or Persons, this certificate, and the signature block.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed January 19, 2025, in Los Angeles, California. Respectfully submitted:                    Winston Kevin McKesson, Esq.

Counsel for Petitioner

**VERIFICATION**

STATE OF CALIFORNIA                )
COUNTY OF LOS ANGELES,             )                    ss.
_____ )

I, Winston K. McKesson hereby declare as follows:

      1.    I am an attorney licensed to practice law in the State of California.

      2.    I represent petitioner Michael Blair Wellington, who is confined in restraint of his liberty.

      3.    I am authorized to file this petition for writ of habeas corpus on petitioner's behalf. I make this verification because I believe it is more appropriate that I, rather than petitioner, verify the allegations contained in this petition. The claims are legal ones, based on the evidentiary record with which I am more familiar than petitioner.

      4.    I have read the foregoing petition and its incorporated memorandum of points and authorities and exhibits. Pursuant to Penal Code section 1474, as construed by *In re Robbins*, (1998) 18 Cal.4th 770, 783, fn. 5 (holding that verification by counsel satisfies the requirements of §1474), I declare that all allegations in the petition and memorandum not otherwise supported by citations to the record or other documents are true to the best of my knowledge, ability, and belief.

      I declare under penalty of perjury that the foregoing is true and correct.

Executed in Los Angeles, California on January 19, 2025.

_____

Winston Kevin McKesson

**Table of Contents**

PETITION ................................................................................................... 9

BASIS FOR SUCCESSIVE PETITION .......................................................... 10

PRAYER ....................................................................................................... 12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS ................................................................ 13

STATEMENT OF THE CASE ........................................................................ 13

STATEMENT OF THE LAW ......................................................................... 14

ARGUMENT................................................................................................. 18

I.      IN VIOLATION OF PETITIONER'S CALIFORNIA AND UNITED STATES CONSTITUTIONAL RIGHTS THE COURT ERRORED WHEN IT ALLOWED THE CONVICTION TO STAND AS THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUSTAIN A GUILTY VERDICT; AND THEREFORE, THE VERDICT MUST BE OVERTURNED. ...................................................... 18

1.      The Evidence and Testimony Was Insufficient to Prove The Crime.................... 19

a.      Charged with Penal Code 187(a)....................................................... 19

b.      No Premeditation or Deliberation........................................................ 20

II.      THE TRIAL COURT VIOLATED PETITIONER'S STATE AND FEDERAL DUE PROCESS RIGHTS WHEN IT FORCED DEFENDANT TO START HIS CASE IN CHIEF PRIOR TO THE CONCLUSION OF THE PEOPLE'S CASE. ..................... 21

III.     THE JUDGE COMMITTED JUDICIAL MISCONDUCT AND VIOLATED PETITIONER'S STATE AND FEDERAL DUE PROCESS RIGHTS WHEN HE BUT THE SPEED OF THE TRIAL OVER PETITIONER'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL ................................................................................................ 23

a.      Introduction .......................................................................................... 23

b.      Misconduct .......................................................................................... 23

c.      The Error Requires Rehearsal ............................................................ 24

IV.    PROSECUTION VIOLATED PETITIONER'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS. ................................................................. 25

V.    IN VIOLATION OF PETITIONER'S CALIFORNIA AND UNITED STATES CONSTITUTIONAL RIGHTS TRIAL COUNSEL'S GAVE INEFFECTIVE ASSISTANCE OF COUNSEL. ........................................................................... 26

VI.    PETITIONER MUST BE GRANTED AN EVIDENTIARY HEARING. ........... 30

CONCLUSION ........................................................................................................... 32

**Cases**

Anders v. California, (1932) 386 U.S. 738 .................................................................. 25

Berger v. United States (1935) 295 U.S. 78 ............................................................... 24

Carella v. California, 109 S.Ct. 2419 (1859) ............................................................. 19

Chapman v. California (1967) 386 U.S. 18 ................................................................ 25

Darden v. Wainwright (1986) 477 U.S. 168 .............................................................. 25

In re Buchman's Estate (1954) 267 P.2d 73 .............................................................. 22

In re Ross, (1995) 10 Cal.4th 184 .............................................................................. 26

Jackson v. Virginia (1979) 443 U.S. 307 ................................................................... 18

Jackson Water Works, Inc. v. Public Utilities Commission of State of California, (1986) 793 F.2d 1090 ............................................................................................... 20, 22, 23

People v. Avery, 35 Cal. 2d 487 ................................................................................. 21

People v. Barnes (1986) 42 Cal.3d 284 ..................................................................... 18

People v. Brown, (2014) 59 Cal.4th 86 ...................................................................... 25

People v. Concha (2009) 47 Cal.4th 653 .................................................................... 18

People v. Coffman and Marlow (2004) 34 Cal.4th 1 .................................................. 25

People v. Johnson (1980) 26 Cal.3d 557 .................................................................... 17

People v. Kelley (1977) 75 Cal.App.3d 672 ............................................................... 24

People v. Morales (2001) 25 Cal.4th 34 ..................................................................... 24

People v. Mosher (1969) 1 Cal.3d 379 ....................................................................... 17

People v. Newland (1940) 15 Cal.2d 678 ................................................................... 17

People v. Redmond (1969) 71 Cal.2d 745 ..................................................... 18

People v. Resendez (1968) 260 Cal.App.2d 1 ............................................... 17

People v. Rodriguez, 58 Cal.App.2d 415 ...................................................... 21

People v. Towler (1982) 31 Cal. 3d 105 ........................................................ 18

Richardson v. Superior Court, (2008) 43 Cal.4th 1040 ................................ 28

Richmond v. Ricketts, (1985) 774 F. 2d 957 ................................................ 29

Schlup v. Delo, (1995) 513 U.S. 298 ............................................................ 32

Strickland v. Washington, (1984) 466 U.S. 668 ............................................ 28

Townsend v. Sain, (1963) 372 U.S. 293 ............................................ 29, 30, 31

United States v. Manton, supra, 107 F.2d ..................................................... 20

United States v. Montgomery, supra, 126 F.2d .............................................. 20

United States v. Navarro-Flores (1980) 628 F.2d 1178 ................................ 23

United States v. Olano, supra, (1993) 507 U.S. 725 ..................................... 32

United States v. Riccardi, supra, 174 F.2d .................................................... 20

## Statutes

Penal Code, Section 187 .......................................................................... 12, 18

Penal Code, Section 1093 .............................................................................. 21

Penal Code, Section 1094 .............................................................................. 21

Penal Code, Section 1473 .............................................................................. 31

Penal Code, Section 12022.5 ....................................................................... 8, 12

Penal Code, Section 29800 .......................................................................... 8, 12

Title 28 United States Code Section 2254(d) ........................................... 10, 13

## Constitutional Provisions

Calif. Const. Art. I, Section 11 ..................................................................... 31

Calif. Const. Art. VI, Section 10 .................................................................. 31

U.S. Const. Amend. 5 ...................................................................... 11, 26, 31

U.S. Const. Amend. 6 ...................................................................... 11, 26, 31

U.S. Const. Amend. 14 ........................................................................................ 11, 26, 31

**TO THE HONORABLE PRESIDING JUDGE(S) OF THE UNITED STATES DISTRICT COURT IN THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

Petitioner Michael Blair Wellington, by and through his counsel, Winston Kevin McKesson, Law Office of Winston Kevin McKesson, hereby petitions the court for a Writ of Habeas Corpus.

## **PETITION**

Petitioner hereby petitions this Honorable Court for a Writ of Habeas Corpus to set aside his conviction in this matter.

Petitioner alleges:

1.      Petitioner is challenging the judgment of the California Superior Court of the County of Los Angeles, Case No. BA492420 entered on or around February 16, 2022, and all subsequent judgments where Petitioner was found guilty.

2.       Petitioner was charged and found guilty by a jury on Count One of murder in the first degree (PC § 187(a)), with a gun enchantment. (PC § 12022.5(a).) On Count Two he was convicted of possession of a firearm by a felon. (PC § 29800(a)(1).) Petitioner filed a motion for new trial, which was denied.

3.      Petitioner appealed his conviction in a timely manner to the California Court of Appeal, Case No. B318724, Division 5, which on November 28, 2023, the court affirmed the trial court decision to deny Petitioner's appeal. In connection with Appeal No. B318724, Petitioner filed a Petition for Review by the California Supreme Court,

Case No. S283303, which on February 14, 2024, the California Supreme Court summarily denied review.

4.      The grounds raised by Petitioner in said Petitions for Review, Nos. S283303 and B318724 are the same as those he is raising in this Petition.

5.      Petitioner has not previously filed a petition for post-conviction relief for these grounds expect those mentioned in paragraph 3 and 4.

6.      Petitioner is unlawfully confined and restrained of his liberty at a California State Prison, Los Angeles County.

7.      The People of the State of California, by and through the Office of the Attorney General and District Attorney for Los Angeles County, are responsible for initiating and continuing the prosecution described against Petitioner in Paragraph 3 and 4, above, and have an interest in the outcome of this writ proceeding. Thus, the People of the State of California are a Party in Interest herein. Moreover, Petitioner is being held by Warden Leanna Lundy (Respondent) a Party of interest.

8.      Petitioner is legally, factually, and actually innocent of the offense for which he was arrested, charged, convicted, and sentenced.

## **BASIS FOR SUCCESSIVE PETITION**

9.      As specifically set forth in this petition, Petitioner has alleged adequate factual and constitutional grounds that provide an equitable basis to review his unlawful and erroneous conviction.  Petitioner incorporates all of the facts set forth in the

accompanying declarations, the exhibits, and Memorandum of Points and Authorities as though fully set forth herein.

10.     Petitioner further alleges that he is independently guaranteed the right of habeas corpus review under Title 28 United States Code Section 2254 having exhausted all his remedies, as detailed above. Furthermore, Title 28 United States Code Section 2244 is inapplicable in the case at bar because this is not a second or successive petition.

11.     Petitioner additionally alleges that his repeated claims of factual innocence together with the constitutional claims alleged herein warrant habeas relief.

12.     The facts alleged herein establish a prima facie claim that errors of constitutional magnitude occurred at Petitioner's trial. Petitioner was prosecuted in a biased manner and convicted by a jury and judge; whose behavior violated Petitioner's constitutional rights. Absent all the constitutional errors that occurred within the meaning of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 7 and 15 of the California Constitution, Petitioner would not have been incarcerated.

13.     Petitioner alleges that he is factually innocent and that a miscarriage of justice occurred in his case within the meaning of the Fifth and Fourteenth Amendments of the United States Constitution and Article VI, Section 13 of the California Constitution.

14.     Petitioner further requests leave to amend the declarations submitted herein should the court find that excusable grounds have not been met on any of his claims alleged herein or further specificity is required.

## **PRAYER**

WHEREFORE, Petitioner Hollie prays for judgment as follows:

1. That a Writ of Habeas Corpus be issued out of this Court;

2. That the respondent be ordered to show cause why Petitioner is not entitled to the relief sought;

3. That an evidentiary hearing be held to examine all records and proceedings in this case and to inquire into the cause and justification for the restraints on Petitioner's liberty caused by the judgment and sentence in Case No. BA492420;

4. That the judgment and sentenced be set aside and vacated;

5. That a Writ of Habeas Corpus be granted, directed to the California State Prison, Los Angeles County of the State of California commanding him or her to have the body of Petitioner Hollie be brought before this Court at a specified time;

6. Take judicial notice of the record on trial transcript and appeal record in Case No. BA492420; and

7. For any other and further relief as the court may deem proper.

Dated: 1/19/2025

Respectfully submitted,

Winston Kevin McKesson, Esq.

Counsel for Petitioner

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

### STATEMENT OF THE CASE

Petitioner was convicted, in or around 2021, by a jury on Count One of murder in the first degree (PC § 187(a)), with a gun enchantment. (PC § 12022.5(a).) On Count Two he was convicted of possession of a firearm by a felon. (PC § 29800(a)(1).)

The Court heard and denied Petitioner's Motion for A New Trial based on ineffective assistance of counsel. Thereafter, the Court sentenced Petitioner to 29 years to life in state prison on Count One and 2 years on Count Two.

In or around February 2022, Petitioner appealed the trial court's decision. The decision of the Appellate Court affirming Petitioner's charges was rendered on November 28, 2023. A copy of that opinion is attached hereto as Exhibit "A". The decision became final on December 28, 2023.

Petitioner then filed his Petition in the California Supreme Court, Case No. S283303 to rectify the great injustice placed upon him by the Superior Court and the State of California, said petition was denied February 14, 2024. A copy of that docket is attached hereto as Exhibit "B".

Petitioner now comes seeking a federal Writ of Habeas Corpus to correct the injustice and constitutional violations that occur.

//

//

## STATEMENT OF THE LAW

The state court procedure resulted in a decision which was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or resulted in a decision which was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding (Title 28 United States Code Section 2254(d)) in that a prima facie case existed establishing the trial and sentencing violated Petitioner's Federal and State constitutional rights.

## STATEMENT OF FACTS

### A.    FACTS RELATED TO THE MURDER

On December 19, 2020, Johnny Jackson ("Johnny") and Jonathan Wellington ("Jonathan"), the brother of Petitioner, Michael Wellington ("Petitioner"), were hanging out at Jonathan and Petitioner's home. (2RT 456.) Prior to Johnny entering the house he parked his car on the grass of Petitioner's home. While in the house Johnny and Jonathan were drinking. (2RT 645.)

Sometime later Zondra, Petitioner's wife, her sister, Star Willis ("Star"), and her friend, Lauren Taylor ("Lauren"), came to the house to have dinner with Petitioner. (2RT 646.) When they arrived, Zondra saw Johnny's car was on the grass and she asked him to move it. (2RT 539.) She also called parking enforcement; however, they were closed. (2RT 546-547.) Johnny did not move his car. (2RT 546-549.) Zondra, her sister, and friend then left to get food. (2RT 548-549.) When they got back the car was still on

the grass. (2RT 549.) Zondra and Lauren went up to Petitioner's room. (2RT 513.) Star went to another room. (2RT 513.)

Eventually Petitioner arrived at the house and saw Johnny's car parked in the grass. (2RT 644.) Petitioner took a breath, as this made him upset, and went inside to calmly talk to Johnny. (2RT 644.) Johnny was on the couch. (2RT 645.) Johnny refused to move his car. (2RT 646.) Petitioner then stepped in the hallway and called for Zondra telling her it was time to go. (2RT 646.) Petitioner went up to his bedroom door. (2RT 648.) Lauren testified that Petitioner was very angry at this point and moved her and Zondra onto the bed when he walked by them in his room. (2RT 514-515.) Petitioner denied this interaction happened. (2RT 648.)

After Petitioner stepped back into the living room Johnny started being a little more aggressive and saying "I ain't gotta move nothin, cuz." And then started to "gang bang" on Petitioner. (2RT 647.) Petitioner believed Johnny was a gang member. (2RT 646-648.) Petitioner decided it was best if he left after that and proceeded outside. (2RT 647.) Johnny follows him outside. (2RT 647.) Jonathan, Zondra, and Star proceed to follow Johnny and Petitioner outside. (2RT 552.) While on the porch Jonathan was yelling that Johnny is going to kick Petitioner's ass and if Zondra does not move Johnny will kick her ass too. (2RT 552-553.)

While outside Petitioner continues to ask him to please move his car (2RT 553.) However, Johnny continued to berate Petitioner letting him know he was not going to move his car. (2RT 648.) This behavior made Petitioner feel threatened by Johnny. (2RT 648.) Zondra was in the middle of Petitioner and Johnny while this was happening trying

to help the situation. (2RT 552.) Johnny then began to walk to his car, which made Petitioner think he was going to move his car. (2RT 649.) However, Johnny actually walked to his car and then walked away from his car, which began to make Petitioner upset. (2RT 649.) Petitioner then gets in his car, as he is partly in the neighbor's driveway. Petitioner then proceeded to try and push Johnny's car. (2RT 472; 519; 649.) Petitioner pushed Johnny's car because he felt threatened and was emotional. (2RT 649.) At this point everyone was outside watching. (2RT 520.) Jonathan testified that Johnny was in the car when Petitioner tried to move it. (2RT 472.)

While Petitioner was still in the car he and Johnny were still arguing. (2RT 521.) Lauren testified she had never seen Petitioner so angry in her life as he was usually very sweet. (2RT 521; 535.) Petitioner was always seen as a kind and non-violent person. (2RT 778; 790; 784.) However, during this incident it was as if the devil was inside him, he was so angry outside. (2RT 535.) As soon as Petitioner proceeded to get out the car Lauren ran and fell to the ground, she did not see anything else after that. (2RT 521-522.) Jonathan testified that Petitioner jumped out the car and started shooting. (2RT 475.) Petitioner testified Johnny reached for a gun and a struggle ensued and that he was able to wrestle the gun away from Johnny. (2RT 652.) Petitioner believed when Johnny pulled out the gun, he was going to kill him. (2RT 651-652.) Around this time Star was looking at her sister and did not see where the gun came from, only that it was in Petitioner's position. (2RT 556-558.) During the struggle the gun went off and a second shot happened shortly after. (2RT 652-654.)

Everyone began to run. Johnny proceeds to run in the house. (2RT 653.) During this time Jonathan is yelling at Johnny to go to his room and get his gun. (2RT 653.) Petitioner follows Johnny in the house believing he is going to go get Jonathan's gun to kill him. (2RT 654-657.) Petitioner walks up to the screen and fires. (2RT 654-657.) Petitioner believed that Jonathan's gun is in the living room by where Johnny and Jonathan were sitting. (2RT 654.) Petitioner proceeds into the house. He believes Johnny has successfully gotten Jonathan's gun because if he wanted to run, he could have run out the back door, which he did not. (2RT 654-657.) While in the house Petitioner's see Johnny's foot behind the bookshelf, which is next to Jonathan's room, Petitioner then proceeds to shoot twice believing he had gotten the gun. (2RT 655-656.) Petitioner in a panic runs out of the house and drives away. (2RT 656.) The whole incident after the gun was pulled happened in two minutes. (2RT 657.)

## B.     FACTS RELATED TO INVESTIGATION

Officer Montes arrived on the scene first and found Johnny had passed away. (2RT 417.) Johnny's body was found next to Jonathan's bedroom door. (2RT 627.) He also saw that Johnny's vehicle looked like it had been pushed into the front of the house (2RT 427.) Officer Wright arrived to assist and testified that Johnny smelt like he had been drinking. (2RT 445.) It was established Johnny had weed and alcohol in his system during the incident. (2RT 841; 849.)

Detective Lambreti was assigned to the case. About 15 days after the incident, Petitioner turned himself in as he agreed he would. (2RT 603; 609.) When searching the

house, it was discovered while Jonathan's door was locked there was a gun found in his room. (2RT 611.)

## C.   PRIOR INCIDENT'S OF THREATS BY JOHNNY TOWARDS PETITIONER.

Johnny had threatened to inflict great bodily injury on Petitioner on several occasions prior to the incident. (2RT 663-664.)

## ARGUMENT

**I.   IN VIOLATION OF PETITIONER'S CALIFORNIA AND UNITED STATES CONSTITUTIONAL RIGHTS THE COURT ERRORED WHEN IT ALLOWED THE CONVICTION TO STAND AS THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUSTAIN A GUILTY VERDICT; AND THEREFORE, THE VERDICT MUST BE OVERTURNED.**

A conviction can be reversed on the grounds of insufficiency of the evidence only when "it ... (is) made clear to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." (*People v. Resendez* (1968) 260 Cal.App.2d 1, 7, citing *People v. Newland* (1940) 15 Cal.2d 678, 681). "Evidence, to be 'substantial' must be 'of ponderable legal significance... reasonable in nature, credible, and of solid value.'" (*People v. Johnson* (1980) 26 Cal.3d 557, 576).

The court must view the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Mosher* (1969) 1 Cal.3d 379, 395). The test becomes whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. (*Ibid*). The court does not,

however, limit its review to only the evidence favorable to the respondent; the issue is resolved as to the whole record, and not isolated bits of evidence selected by the respondent. (*People v. Johnson*, supra, 26 Cal.3d at 577). Due process mandates that the standard for evaluating the sufficiency of evidence in a criminal case is whether any rational trier of fact could find guilt beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 317-318.)

The evidence must be substantial enough to support the finding of each essential element of the crime. (*People v. Barnes* (1986) 42 Cal.3d 284, 303). Substantial evidence is that which is reasonable, credible and of solid value. (*Ibid*). Reversal is not warranted if the findings are reasonable and supported by the evidence, even if a contrary finding might also be reasonable. (*People v. Redmond* (1969) 71 Cal.2d 745, 755). "Whether the evidence presented at trial is direct or circumstantial, under *Jackson* and *Johnson* the relevant inquiry on appeal remains whether any reasonable trier of fact could have found the Petitioner guilty beyond a reasonable doubt." (*People v. Towler* (1982) 31 Cal. 3d 105, 1257).

**1. The Evidence and Testimony Was Insufficient to Prove The Crime.**

    **a. Charged with Penal Code 187(a).**

Murder is the unlawful killing of a human being, or a fetus, with malice aforethought. (PC 187(a).) "To satisfy the mens rea element of murder, the defendant must personally act with malice aforethought." (See *People v. Concha* (2009) 47 Cal.4th 653, 660.)

Based on the testimony there was no malice aforethought; therefore, there can be no first-degree murder as charged. Petitioner felt fearful, threatened, and acted in self-defense. (2RT 653-655; 712.) There was no intent to kill Johnny at all. (See Entire Record.)

### b.  No Premeditation or Deliberation

All testimony obtained in this case showed that Petitioner acted in the moment. The whole interaction was approximately two minutes. (2RT 657.) Petitioner testified to feeling threatened and as if his life was in danger. (2RT 653-657.) Petitioner testified that he only shot because he believed Johnny was going to get a gun to kill him. (2RT 653-657.) There was no evidence presented establishing premeditation or deliberation on the part of Petitioner.

Looking at all the evidence, or lack thereof, it should be clear there is not enough evidence even when viewing it in the most favorable light to convict Petitioner. The evidence present at trial was insufficient to sustain a guilty verdict for first-degree murder. The due process clause of the Fourteenth Amendment denies states the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offence.  (U.S. Const. Amend. 14.; *Carella v. California*, 109 S.Ct. 2419 (1859).) The court did not protect Petitioner when it allowed him to be convicted on insufficient evidence; therefore, his case must be reversed.

//

//

## II.   THE TRIAL COURT VIOLATED PETITIONER'S STATE AND FEDERAL DUE PROCESS RIGHTS WHEN IT FORCED DEFENDANT TO START HIS CASE IN CHIEF PRIOR TO THE CONCLUSION OF THE PEOPLE'S CASE.

The Due Process Clause guarantees the aggrieved party an opportunity to present his or her case and have its merits fairly judged. Calif. Const. Amend. 14th; *Jackson Water Works, Inc. v. Public Utilities Commission of State of California*, (1986) 793 F.2d 1090, certiorari denied.) The order of proof is a matter addressed to the sound discretion of the trial court whose action will not be reversed unless such discretion has been grossly abused, i. e., where the order of proof was harmful or prejudicial. (*United States v. Manton*, supra, 107 F.2d at page 844; *United States v. Montgomery*, supra, 126 F.2d at page 153; cf. *United States v. Riccardi*, supra, 174 F.2d at page 890.)

In this instant case the trial court abused its discretion when it forced Petitioner to begin his case in chief prior to the closing of the People's case. Prior to the People closing it had one more witness, a coroner. (2RT 585.) On September 28, 2021, the People finished its witness earlier than expected; however, the People could not call its last witness because he would not be ready until the next day. (2RT 583-584.) Instead of ending the trial for the day, the Court forced Defendant to begin his case, over his objection. (2RT 585.) This fundamentally prejudiced Petitioner.

Petitioner's case began with him testifying as to what happened and what led to the shooting of the victim. He testified about his fear for his safety and the safety of his wife. (2RT 651-657.) He also testified to him believing the victim was going to get a weapon to kill him. (2RT 654-657.) He testified believing the victim had a gun at the

time he shot him. (2RT 654-656.) Petitioner's witnesses were also forced to testify. Petitioner's testimony was the most crucial part of his defense, as well as the testimony of his witnesses, and it was all for not. The next day the People called the coroner, who testified the victim's bullets wounds, there trajectory, and the effect they had on the victim's vital organs. (2RT 803-813.) This testimony basically negated Petitioner's testimony regarding self-defense and his character. It fundamentally cripped Petitioner's defense, which trial counsel alluded to when he objected. (2RT 614; 617.) He had just presented his strongest witness, himself, and the next day the People present a corner discussing how the victim died and how the bullets led to his death. There is no way Petitioner could get a fair trial after that.

The practice of allowing the district attorney to withhold a part of his case in chief and to offer it after the defense had closed was properly condemned in *People v. Rodriguez*, 58 Cal.App.2d 415, 419. While the order of proof rests in the sound discretion of the trial court (PC § 1093, subd. 4; and PC § 1094), an abuse of that discretion might well result from such practice. (*See People v. Avery*, 35 Cal. 2d 487; *United States v. Manton*, supra, 107 F.2d at page 844; *United States v. Montgomery*, supra, 126 F.2d at page 153; cf. *United States v. Riccardi*, supra, 174 F.2d at page 890.) This is one of those times. Petitioner understands the court has the discretion; however, seeking speediness of a trial over Petitioner's right to due process and a fair trial is improper. (2RT 585; 632; 3402-3410.) There is no more important right for Petitioner who was being convicted of murder and the court stripped him of that right for selfish reasons. There is no reason ending early one day would have greatly affected the timeliness of the trial. But the

court's desire to put the speediness of the trial over the Petitioner's rights was a common theme. (2RT 434-437; 583-585; 632; 3402-3410.)

It is clear the court abused its discretion regarding the order of proof in forcing Petitioner to begin his case in chief prior to the People calling its last witness. That violation of Petitioner's constitutional rights requires reversal.

### III. THE JUDGE COMMITTED JUDICIAL MISCONDUCT AND VIOLATED PETITIONER'S STATE AND FEDERAL DUE PROCESS RIGHTS WHEN HE BUT THE SPEED OF THE TRIAL OVER PETITIONER'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL

#### a.  Introduction

Judicial absolutism is not a part of the American way of life, and the odious doctrine that the end justifies the means does not prevail in our system for the administration of justice.  (*In re Buchman's Estate* (1954) 267 P.2d 73, 123.) The Due Process Clause guarantees the aggrieved party an opportunity to present his or her case and have its merits fairly judged. Calif. Const. Amend. 14th; *Jackson Water Works, Inc. v. Public Utilities Commission of State of Californi*a, (1986) 793 F.2d 1090, certiorari denied.)

The actions of Judge Escobedo in prioritizing a quick trial over a fair and constitutionally proper trial is unacceptable and the Court must reverse and dismiss.

#### b.  Misconduct

Judge Escobedo on at least five (5) different occasions choose rushing Petitioner's trial rather than protecting his right to a fair trial:

1. 2RT 434: the court allowed the cross-examination of a witness prior to the People finishing with its direct.

2. 2RT 437: shows the problem with the court making its earlier decision and the prejudicial effect it had on Petitioner.

3. 2RT 583-585; 3RT 3402-3410: calling case and chief out of order to expedite the case, which was done over trial counsel's objection. The coroner's testimony was important regarding gsr (2RT 614-617), amongst other things.

4. 2RT 676: the court states its main goal is to move things along for the jury.

While each individual act alone may not reach the level of judicial misconduct the cumulative effect of all the actions clearly shows Judge Escobedo's inability to perform the duties of her job in protecting the rights of Petitioner.

  c.  **The Error Requires Rehearsal**

It is Petitioner's position that Judge Escobedo on several occasions showed her bias and inability to perform his job of protecting Petitioner's rights. A hearing by a biased judge does not comport with fundamental concepts of due process of law. (U.S.C.A. 5; *U.S. v. Navarro-Flores* (1980) 628 F.2d 1178.) On several occasion Judge Escobedo made improper decisions, which created a miscarriage of justice. The Due Process clause guarantees aggrieved party opportunity to present its case and have its merits fairly judged. (U.S.C.A. 14; *Jackson Water Works, Inc. v. Public Utilities Com'n of State of Cal.* (9th Cir. 1985) 793 F.2d 1090.)

Petitioner contends that Judge Escobedo showed bias, prejudice, and partial against Petitioner before, throughout, and at the conclusion of the cases. Judge Escobedo

actions of prioritizing the speed of the trial irrespective of Petitioner's rights clearly show distain for Petitioner. Viewing all events cumulatively Judge Escobedo did not act impartially or carry out the duties of his job. Based on Judge Escobedo's misconduct and its prejudicial effect on Petitioner's case and rights the Court must reverse said conviction and dismiss.

## IV.    PROSECUTION VIOLATED PETITIONER'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS.

A prosecutor's misconduct violates the federal constitution where it "infects the trial with such unfairness as to make the conviction a denial of due process." (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 92.) "In other words, the misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." (*Ibid*.; see also, e.g., *Darden v. Wainwright* (1986) 477 U.S. 168, 181.)

Furthermore, prosecutors are held to an elevated standard of conduct to that imposed on other attorneys because of the unique function they perform in representing the interests, and in exercising the sovereign power, of the state. (*People v. Kelley* (1977) 75 Cal.App.3d 672, 690.) As the United States Supreme Court has noted, the prosecutor represents "a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." (*Berger v. United States* (1935) 295 U.S. 78, 88.) The prejudice standard of *Chapman v. California* (1967) 386 U.S. 18 applies to prosecutorial misconduct that violates the federal constitution, either because the misconduct, due to its overall pervasiveness and/or egregiousness, amounts to a

violation of the federal constitutional right to due process, or because the misconduct involves the violation of another federal constitutional right.

Besides the actions listed above, the People at trial implied that they would be inclined to file charges as an accessory after the fact if she testified. (2RT 853-855.) This behavior was highly improper as she was a key witness and one of the actual witnesses to the entire incident. The People's behavior was reprehensible, and it was clearly used to limit the information the jury had and persuade it to find Petitioner guilty. The People's job is to find the truth, not chase guilty verdicts. The incident happened in 2020 and to date the People have not brought any charges against anyone else involved. That is because it does not plan to. The People just wanted to ensure Petitioner's wife did not testify by making her take the fifth after threatening to bring charges against her. (2RT 853-858.)

In this case the People used selective/discriminatory prosecution and, vindictive prosecution, which are not allowed. (See, e.g., *United States v. Armstrong* (1996) 517 U.S. 456; *Blackledge v. Perry* (1974) 417 U.S. 21.) This Court must not allow the People's behavior in this case to go unchecked. Petitioner requests the Court reverse and dismiss the charges based on the violations by the Prosecution.

## V.    IN VIOLATION OF PETITIONER'S CALIFORNIA AND UNITED STATES CONSTITUTIONAL RIGHTS TRIAL COUNSEL'S GAVE INEFFECTIVE ASSISTANCE OF COUNSEL.

The right to be represented by counsel is by far the most important of a defendant's constitutional rights because it affects the ability of a defendant to assert a myriad of other rights. (*Anders v. California*, (1932) 386 U.S. 738, 743.) The right to the

assistance of counsel is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the California Constitution. In this case Petitioner's trial counsel failed to offer him adequate assistance.

### a.    Factor For Ineffective Assistance of Counsel.

In *People v. Brown*, (2014) 59 Cal.4th 86, 109 the court held that in order for a convicted defendant to establish that he or she was deprived of the Sixth Amendment right to effective assistance of counsel at trial, the defendant would have to show: (1) deficient performance by trial counsel; and (2) prejudice. In determining whether trial counsel's performance was constitutionally deficient, the reviewing court looks to the reasonableness of counsel's conduct under "prevailing professional norms." (*In re Ross*, (1995) 10 Cal.4th 184, 201.)

There are three reasons why counsel representation was ineffective and must be rectified: 1) counsel was ineffective in investigation, preparation or for another substantial reason; 2) counsel's failure to investigate mitigating evidence; and 3) counsel's performance fell below an objective standard of reasonableness and was deficient and prejudiced Defendant. It is believed that these three reasons collectively and/or separately lead to a valid claim of ineffective assistance of counsel.

### i.    Counsel was ineffective in investigation, preparation or for another substantial reason.

When preparing his case trial counsel failed to properly investigate the charges and facts against Petitioner. Trial counsel failed to retain a gang expert and mental health expert to look into his mental state at the time.

When preparing for the case trial counsel should have retained a gang expert who would have talked about the fear individuals have for gang members. Petitioner testified that he had a belief that the victim was a gang member and that his brother threatened to have his gang friends hurt Petitioner. (2RT 705-707.)

Furthermore, when preparing for the case a mental health expert should have been retained to look into Petitioner's flight or fight response, his sanity, and belief of self-defense as they would have all led to lesser charges. There was testimony that Petitioner was one of the nicest men (2RT 778-790.); however, on this occasion it seemed like the devil was in him. (2RT 535.) Petitioner feared for his life and believed Johnny was going to kill him at multiple junctures during the incident. (2RT 654-658.) This behavior switch was unlike Petitioner and should have been looked into. Moreover, Petitioner was claiming self-defense as he believed the victim was going to hurt him and his wife. Yet, trial counsel offered no expert to speak about Petitioner's belief or mental state at the time to see if his belief was rational and/or justified. Trial counsel did no such investigation.

### ii.   Counsel's failure to investigate mitigating evidence.

As stated in the last section, trial counsel failed to find and offer into evidence any mitigating evidence. Trial counsel just had Petitioner testify to his belief but offered no expert opinion to support that belief, which is crucial. Moreover, trial counsel latched on to the victim being drunk and on drugs; however, that offered very little assistance to what the alleged defense was, self-defense. In addition, that strategy in no way tackled the hurdle of actual malice. If trial counsel had hired the proper experts to discuss

Petitioner's mens rea it could have had a reasonable probability to alter the jurors mind on what actually caused the accident, as well as the Petitioner's state of mind. This all could have changed the verdict or at least lessened the charges to second-degree murder or manslaughter.

### iii. Counsel's performance fell below an objective standard of reasonableness making it deficient and prejudiced Defendant.

The failure of trial counsel to not properly investigate all aspects of the crime, including gang, mental health expert, mental health opinion on Petitioner, and Petitioner's state of mind at the time of the accident all show how his representation was ineffective and prejudiced Petitioner. The job of trial counsel is to perform his duties up to the standards of a reasonable diligent attorney in the field (*Strickland v. Washington*, (1984) 466 U.S. 668.) That did not happen here. Trial counsel was deficient in his investigation, preparation, and execution of his defense.

Any criminal attorney when dealing with this type of case would have retained a gang expert or the very least a mental health expert to discuss the most crucial part of the crime, which is the mens rea element. Any criminal attorney would have ensured that their experts, and him/her self, turned over every stone to guarantee their case and chief was beyond reproach, which was not done here. These deficiencies prejudiced the Petitioner's ability to have a fair trial. Trial counsel's lack of completeness caused the Jury and Judge to only hear a small sample, if that, of what could have been a great defense; therefore, failing to protect Petitioner's constitutional rights.

Per the California Supreme Court, the term "reasonable probability" as used in Strickland means "a reasonable chance and not merely an abstract possibility" that the defendant would have obtained a more favorable result. (*Richardson v. Superior Court*, (2008) 43 Cal.4th 1040, 1051.) A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*Id*. at p. 694.) There is a reasonable probability that if the Jury and Judge heard the complete evidence as detailed above that a more favorable outcome would have been rendered, which includes a lesser charge. Furthermore, trial counsel's deficiency and the prejudice it caused was material having a dire impact on Petitioner's constitutional right to a fair trial, effective assistance, and most importantly his case.

## VI.     PETITIONER MUST BE GRANTED AN EVIDENTIARY HEARING.

The issue whether an evidentiary hearing must be held is based on whether the actual state court hearing provided Petitioner a fair opportunity to fully develop factual issues. (*Townsend v. Sain*, (1963) 372 U.S. at 318. The court in *Richmond v. Ricketts*, (1985) 774 F. 2d 957, determined that granting of a hearing must be based on the six criteria in *Townsend*, and that "[t]he statutory "presumption of correctness," See 28 U.S.C. Sec. 2254(d), says nothing, however, about when a district judge must hold an evidentiary hearing. Although the presumption implicates similar concerns about the sufficiency of the state court's evidence, Section 2254(d) primarily addresses the scope of federal court review of specific state court factual determinations." (*Richmond v. Ricketts*, (1985) 774 F. 2d 957 at 960.)

The six criteria for granting an evidentiary hearing stated in *Townsend* are: (1) the merits of the factual dispute were not resolved in the state hearing, either at the time of the trial or in a collateral proceeding; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact finding procedure employed by the State Court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of fact did not afford the applicant a full and fair fact hearing. (*Id*. at 312-318).

An analysis of the *Townsend* criteria supports the conclusion that Petitioner must be granted an evidentiary hearing, at the minimum. First, the factual dispute in question is whether Petitioner committed the crime in self-defense or the murder was committed to a lesser degree then what was charged.

Second, Petitioner was found guilty based circumstantial evidence given an improper determination. There was no evidence supporting that the crime was at the most more than a crime of rage and passion. An examination of the record exposes no concrete evidence that the crime was premeditated and deliberate.

Third, there was clear self-defense evidence and a psychological evaluation that was not looked into.

Fourth, the newly acquired evidence being reviewed goes directly to Petitioner inability to be part of a fair and impartial trial, his constitutional right; it cast significant doubt on Petitioner participation in the crime. For all the reasons above and throughout

this Petition, the allegation of newly acquired evidences is momentously substantial and requires the Court's attention.

Fifth, because of the ineffective assistance of counsel Petitioner's claim were not fully developed or examined.

Sixth, even if the court does not concur with *Townsend* Criteria Five, the record clearly demonstrates that the State denied Petitioner his right to a full and fair trial.

Based on the criteria of *Townsend*, it is clear that an evidentiary hearing must be awarded.

## **CONCLUSION**

Petitioner's constitutional rights were violated and there must be redress. The right to be represented by counsel is by far the most important of a Petitioner's constitutional rights because it affects the ability of a Petitioner to assert a myriad of other rights. (*Anders v. California*, (1932) 386 U.S. 738, 743.) Petitioner's trial counsel violated his right to have effective assistance of counsel on several occasion from being retained to the trial. His lack of effort, preparation, and due diligence not only caused great prejudiced to Petitioner is also caused him to be found guilty of a crime he did not commit. For that alone this conviction must be reversed and a new trial set. Further, based on the evidence alone there is no way a jury should have found Petitioner guilty of the accused crime.

For the foregoing reasons, an Order to Show Cause should be issued, an evidentiary hearing should be ordered, the writ of habeas corpus should be granted, the

judgment and sentence imposed on Petitioner should be vacated, and a new

trial/sentencing hearing should be held.

Dated: 1/19/2025

Respectfully submitted,

Winston Kevin McKesson, Esq.

Counsel for Petitioner

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my

business address is **14622 Ventura Blvd, Ste. 736, Sherman Oaks, Ca 91403**


On January 20, 2025, I served the **PETITION FOR WRIT OF HABEAS CORPUS and EXHIBITS SUPPORTING PETITION FOR WRIT OF HABEAS CORPUS** in the interested parties in this action by placing the **true copy**/original thereof, enclosed in a sealed envelope, postage prepaid, addressed as follows:

Office of the Attorney General
300 South Spring St., Ste. 1700
Los Angeles, CA 90013

Leanna Lundy
44750 60th Street West,
Lancaster, CA 93536

I am readily familiar with the business practice of my place of employment in respect to the collection and processing of

correspondence, pleadings and notices for mailing with United States Postal Service.


X    **(STATE)**          I declare under penalty of perjury under the laws of the State of California that the foregoing

is true and correct.

**(FEDERAL)**          I declare I am employed at the office of a member of the bar of this Court at whose direction

the service was made.

Executed on January 20, 2025 at Woodland Hills, California.

_____

Signature

Stefon Jones
_____

Print Name